## LAWYERS CO-OPERATIVE PUBLISHING CO v ROSE

Ohio Municipal Court of Cleveland

B. C. Shepherd, Cleveland, for plaintiff.
Harold H. Barnett, Cleveland, for defendant.

### OPINION

By COPELAND, J.

The following are the facts in the instant case:

The plaintiff company is a corporation

engaged in the compilation, manufacture and publication of law books and as part of its said business it publishes what is commonly known as "Ohio Jurisprudence."

On May 10, 1930, the said plaintiff and one Harry J. Epstein entered into a contract for the sale of the volumes of Ohio Jurisprudence and which contract is as follows:

"OHIO JURISPRUDENCE
"TO .THE LAWYERS CO-OPERATIVE PUBLISHING CO., Rochester, N. Y.

"Please forward prepaid the published volumes of Ohio Jurisprudence and enter my order for future volumes as issued for which I agree to pay $12.50 per volume on the following terms:

"Cash payment: $10.00, check herewith.

"Quarterly installments: $22.50 each, beginning Sept. 1, 1930, with interest at 6% only on overdue installments.

"The publisher guarantees to supply at cost of transportation only, any volumes in excess of 40 necessary to complete the set.

' "Current annual cumulative service keeping text down to date to be billed as follows: Service for 1929 free; service for 1930 at $5.00; service for 1931 at $7.50; service thereafter $10.00 per year until further notice by either party.

"Right of transfer (including guarantee) to any attorney of satisfactory credit standing, provided books delivered are fully paid for. In case of default in any payment for 30 days, price of all books delivered may, at the option of the vendor, be declared due and payable. All books to belong to the vendor until entire purchase price is paid. Draft for any overdue payment on subscription will be honored on three days' notice.

"No representation or agreement has been made by salesman not herein stated, and duplicate of this contract has been retained by purchaser.

"(Signed) HARRY J. EPSTEIN
"1611 Guarantee Title Bldg.,
"Cleveland, Ohio."
"May 10, 1930
"No. 1182 Salesman O. F. Smith.
"(At side) This contract is subject to approval by The L. C. P. Co."

Pursuant to said contract the plaintiff did deliver to the said Harry J. Epstein on divers dates between May 17, 1930 and August 15, 1932, twenty-three volumes of Ohio Jurisprudence and from October 17, 1932 until November, 1934, it delivered twelve additional volumes, together with certain supplements. (This court purposely separates the dates of delivery for reasons hereinafter set forth). All of the foregoing volumes were duly received by the said Harry J. Epstein, and as of September 14, 1932, there was due and unpaid upon said volumes by the said Harry J. Epstein to the plaintiff the sum of One Hundred and Sixty-five Dollars ($165.00); that with the additional volumes forwarded by the plaintiff subsequent to September 14, 1932, for which charges were made to the said Harry J. Epstein, and taking into consideration all of the payments made by him to the plaintiff on the said account, there appeared to be due and unpaid upon the total number of volumes delivered by the plaintiff to the said Harry J. Epstein the sum of One Hundred Thirty-five Dollars and Five Cents ($135.05).

A copy of the foregoing contract was filed for record in the office of the recorder of Cuyahoga County, Ohio, on the 17th day of September, 1932, and there appeared on the back thereof an affidavit executed by one H. D. Shedd, the agent of the plaintiff company, setting forth that the amount of the claim of the plaintiff under the said contract was One Hundred and Seventy Dollars ($170.00) with interest.

Subsequently, to-wit, on or about September 23, 1935, the said Harry J. Epstein, being indebted to the defendant, Harry H. Rose, did transfer title to all of the said volumes to the said defendant.

Subsequently, to-wit, some time during January, of 1937, the said Harry J. Epstein died intestate and without any property to administer.

By reason of the default in the payment of the account due plaintiff by said Harry J. Epstein, this plaintiff instituted the present action asserting a lien upon all the volumes furnished by it to Epstein (and all of which are in possession of the defendant Harry H. Rose) and seeking foreclosure thereof.

It will be noted that in the contract entered into between the plaintiff and Epstein, title to the property in question was to remain in vendor until the entire purchase price was paid.

It is contended by the plaintiff that the vendee, Harry J. Epstein, never having title to the books in question, could not convey the same to the defendant and hence defendant has no standing in court. However, this court will dispose of this contention immediately by stating that Ep-

stein certainly had at least equitable title to the chattels, because of which he could certainly convey.

"A vendee who has paid part of the price under a conditional sales contract has such an interest in the property which may be sold or mortgaged." (C.C.A.) Bettman v Johnson, 63 Bulletin 360.

We now come to the contention of the defendant that inasmuch as the plaintiff did not refile its conditional sales contract within three years after the original filing, that it thereby lost its lien rights as to third parties, and in support of his contention defendant refers to §8568, **GC**, under Sub-section B, wherein some phraseology is used providing that such affidavit shall be refiled during a period of three years from the date of the filing of such original affidavit. However, this Sub-section B has no relationship to the facts at issue and refers only to certain exceptions having no relation to the instant case.

It is well that we look into the history of conditional sales contracts insofar as Ohio is concerned.

Under the common law a vendor had a lien upon chattels for the unpaid purchase price so long as such vendor retained possession thereof.

Whether for purposes of convenience in commerce and in trade or to accelerate and facilitate the transfer and possession of chattels and yet permit the vendor to retain a lien thereon for the unpaid balance of the purchase price thereof, Ohio recognized the same by permitting conditional sales contracts to be effective even as against innocent persons and mortgagees where such sale of chattels was reduced to writing. Originally there was no necessity for any other formality than this.

Recognizing, however, the great injustices that were done and the avenue of fraud that was thereby opened, the Legislature, on May 24, 1885, amended the conditional sales law whereby title to the chattels could remain in vendor until the purchase price was paid by vendee, but required, as a perequisite, the filing of said conditional sales contract or a copy thereof together "with a statement thereon under oath made by the person so selling, leasing or delivering the property, his agent or attorney, of the amount of the claim, * * * with the county recorder of the county. * * *." (See §8568, GC).

Thus, a conditional sales contract is peculiarly a creature of the statute, as can be readily seen and is to be distinguished from chattel mortgages. Under the provisions of our laws governing chattel mortgages, there is a requirement that same be refiled within three years after the original filing to validate the lien of the mortgagee as against third parties; but insofar as conditional sales contracts are concerned, this provision with respect to refiling does not appear in the statute, and whether the Legislature intended that such provision should apply or not is not for this court to determine. Suffice it to say that in the absence of any provision for refiling of conditional sales contracts, this court holds that such refiling is not necessary and hence, the plaintiff ▮▮▮▮▮▮▮▮ having filed its conditional sales contract on September 17, 1932, it acquired a good and valid lien upon the chattels therein described as against the world, qualified, however, in the instant case by the conclusions reached by this court in respect to the contract in question.

We now come to the matter which this court deems to be of paramount importance in the determination of the relative rights of the parties and unfortunately there appears no chartered course by way of previous decisions exactly in point in our state which may guide this court in arriving at its conclusions. But even though that condition may prevail, yet this court is not without the benefit of certain fundamental principles involved and which have, in this court's judgment an important relation to the cause at issue.

The contract between the vendor and vendee is quite ingenious. It attempts to set up the rights between the parties and to create in the vendor a lien upon the chattels then in esse and in the same instrument to give to the vendor a lien upon the chattels not in esse but contemplated to be manufactured or published and delivered at a later date.

As a fundamental principle of law a conditional sales contract is valid as to chattels to be manufactured and ▮▮▮▮▮▮▮▮ delivered subsequent to the execution and delivery of the contract in question, but such conditional sales contract, to be effective, must be a valid and enforceable one. Thus, a contract to be valid must have mutuality and certainty. As stated by the court in **Coal Co. v Ulland, 7 O.C.C. (N.S.) 605;**

"A contract for the sale of a certain proportion of the nut and slack produced

from the operation of a coal mine is not mutually binding upon the parties and cannot be enforced, when by its terms it is left entirely optional with the sellers whether or not they will separate any or all of the nut and slack from the run of the mine."

And again as stated in the case of **Phillip v Farrin Lumber Co., 8 O.N.P. (N.S.) 274:**
"contract for the purchase of lumber which is so indefinite that the amount to be furnished under the contract cannot be ascertained with any degree of certainty, either from the contract itself or from extrinsic evidence is not enforceable and is also invalidated for lack of mutuality."

Incidentally, the law books published by the plaintiff itself are replete with cases holding similarly to the above.

And now let us examine the contract entered into between the plaintiff and Epstein. A careful reading of same indicates at once that there is no responsibility upon the vendor under such contract to actually publish any volumes subsequent to those in esse at the time of the execution of such contract. Suppose, for example, the plaintiff stopped the publication of any further volumes. Suppose also that the plaintiff decided to abridge the subsequent volumes. Suppose the plaintiff published additional volumes at long intervals. Suppose, instead of hiring professors to compile these subsequent volumes, in order to make the publication more profitable, it employed students at a much lesser cost and whose analyses on important legal questions incorporated in those volumes might be faulty. What, if any, remedy would Epstein have? As this court views it, such vendee would have none.

In other words, every presumed engagement on the part of publisher, subsequent to the volumes which were in esse at the time of the execution of the contract, was optional with it.

Certainly Epstein did not have a cause of action for specific performance; and if it is argued that the vendee would have a cause of action for damages for breach of contract, then what would his measure of damages be? At best, they would be conjectural and speculative, and it is fundamental that no recovery can be had where the damages are conjectural and speculative.

The contract in question is a **contract to sell**—executory in its nature. It is dual in its nature—legal and enforceable as to those volumes which were in esse at the time of execution, and unenforceable as to the subsequent volumes. Therefore, as to those volumes which were in esse at the time of the execution of the contract, there was effectuated between the parties a legal conditional sales contract contemplated within the provisions of the statute, but as to those not in esse it might well be doubted whether or not the plaintiff acquired a valid lien on same by reason of the indefiniteness, uncertainty and lack of mutuality with respect to the time of publication, quality or quantity.

This court has gone into this matter at some length, since it inevitably leads us to the question as to whether or not the present contract is entire or severable.

It is fundamental where a contract to sell or of sale is entire or divisible depends on intention. If it consists of several and separate items with a price apportioned to each and to be delivered at separate times, the contract is severable. See **Huntington & Fink Co. v Lake Erie Lumber & Supply Company, 109 Oh St 488.**

Thus it becomes a pertinent question as to whether or not one affidavit setting forth the presumed entire amount of the claim may cover a severable contract so as to create in the vendor a valid lien as to all separate parts and deliveries under said contract.

In this connection, it will not do for the plaintiff to say that the contract is an entire one since if that position is tenable, then how does the plaintiff account for its affidavit on the back of said conditional sales contract, recorded with the county recorder of Cuyahoga County, wherein, on September 14, 1932, it stated that the amount of its claim was One Hundred and Seventy Dollars ($170.00) with interest. If the contract in question was an entirety and one of certainty and of mutuality, it could well have computed the amount of its entire claim for which it seeks or sought to have a lien. The evidence conclusively shows that the entire claim, which plaintiff contends it was entitled to, and had a lien, amounted to Four Hundred Eighty two Dollars and Fifty Cents ($482.50).

While the facts are not similar, yet this court is impressed with the decision of the United States District Court for the Southern District of Ohio, in the case of Columbus Merchandise Co. v George W. Kline, wherein it stated:

"When a series of conditional contracts of sale are entered into at different times,

each contract describing the goods sold, but not the date of sale, and showing on its face that the goods therein mentioned are not embraced within any of the other sales, and copies of all such contracts and a single typewritten affidavit are fastened together by brass fasteners and filed with the county recorder, such affidavit stating only the amount due on all of such contracts and describing the property mentioned in the several contracts as if it were the subject of a single transaction, such filing is, under the Ohio statute, ineffectual. Each contract of sale is a distinct and separate entity and must be complete within itself and all that is required to make it valid as against creditors must appear upon the instrument filed as such."

And in that case the court cites and follows the case of **Benedict v Peters, 58 Oh St 527**, where the court stated:

"The statement required by this section is to be made under oath by the mortgagee on the mortgage as to the amount of his claim and that it is just and unpaid, is vital to the spirit of the statute in the light of the mischief it was intended to prevent. It subjects the conscience of the party to the severe test of an oath as to the amount and justice of his claim to be secured by the mortgage. * * * All that is required to make it a mortgage as against creditors must appear upon the instrument filed as such. It cannot be helped out by parole."

As stated by our own courts in **Boyer v Howland, 11 O.C.C. (N.S.) 564**:

"The policy of this state required literal compliance with statutory provisions with reference to conditional sales."

Thus, apart from every other consideration hereinbefore referred to, the affidavit appearing on the conditional sales contract setting forth the amount █ of the claim must set forth the **full** amount of such claim and the lien of the vendor in such conditional sales contract is **limited to the amount of the claim appearing thereon.**

If it were otherwise, it would defeat the purpose of this entire act. The statutes pertaining to conditional sales contract are not only for the protection of the vendor but the vendee and third parties have also certain rights and benefits thereunder and third parties may be free to deal with such chattels and are charged only with knowledge that as of the date of the execution of the affidavit on said conditional sales contract the vendor had a lien on such chattels not exceeding such amount appearing thereon.

It might be contended by plaintiff that the amount of the lien rights which it now is attempting to assert is less than the amount appearing on the back of the conditional sales contract, but this court will answer by stating that the payments made by the vendee subsequent to the date of the affidavit in question are to apply on such amount appearing on said affidavit, there appearing no intention that they should apply otherwise. In other words, this court goes on the long established line of authorities where payment █ is made on an account and nothing is said as to the manner of its application, such payment will be applied to the items of longest standing, and further, where the rights of innocent parties intervene, they will be applied so as to obviate harshness.

"The common law rule as to the application of payments prevails in Ohio." Case of **Moorman v Voss, 3 O.N.P. (N.S.) 145.**

"A general payment is applied in discharge of the earlier items." **Berkel v Petticrew, 6 Oh St 247.**

It is well that the court now point out that the payment made by Epstein subsequent to September 14, 1932, amounted to about Two Hundred and Thirty Dollars ($230.00)—far in excess of the amount appearing to be due on the affidavit in question.

Thus summing up, the court finds:

1. That Harry Epstein, the vendee under the conditional sales contract in the instant case, had sufficient title to the chattels involved therein to permit the transfer and conveyance of such title and possession to third parties.

2. That the defendant, Harry H. Rose, acquired title to said chattels from Epstein for a good and valuable consideration on September 25, 1935, and as such became an innocent purchaser for value.

3. That where a conditional sales contract such as the one in question has endorsed thereon, pursuant to the provisions of §8568, GC, the amount of the claim of the vendor, the vendor in such case is limited in its lien to the extent of such amount less any payments made thereon.

By reason of all of the foregoing, the court hereby makes a finding in favor of the defendant.